# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUSTINA M. FICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-12-14-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Justina M. Fick requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born January 26, 1960, and was fifty years old at the time of the administrative hearing. (Tr. 30, 114). She completed the eleventh grade, and has no past relevant work. (Tr. 20, 128). The claimant alleges that she has been unable to work since January 1, 2000 due to anxiety; depression; high blood pressure; headaches; pain in the left leg, lower back, and neck; and mental problems including a past suicide attempt. (Tr. 123).

### Procedural History

On November 18, 2009, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 8, 2011. (Tr. 11-22). The Appeals Council then denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a wide range of medium work, *i. e.*, she could lift/carry fifty pounds occasionally and twenty-five pounds

-3-

frequently and stand/walk/sit six hours in an eight-hour workday, with the additional limitation of performing simple, unskilled tasks, but not detailed or complex tasks which do not require interaction with the general public. (Tr. 15). The ALJ concluded that although the claimant had no past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, press machine operator, dry cleaner helper, automatic machine attendant. (Tr. 21).

**Review**

The claimant contends that the ALJ erred: (i) by improperly evaluating the treating source opinion from Dr. Richard Zielinski, and (ii) by improperly finding that she had the RFC to perform substantial gainful activity. The Court finds the claimant's first contention persuasive for the following reasons.

The claimant had the severe impairments of lumbar strain, obesity, hypertension, and mood disorder with suicidal thoughts. (Tr. 13). The relevant medical evidence reveals that on January 27, 2009, the claimant was admitted to Valley View Regional Hospital for alcohol intoxication and to rule out suicidal ideation. She denied any suicidal ideation at the time. (Tr. 202-203). She also received treatment for her depression and anxiety at Mental Health Services of Southern Oklahoma (MHSSO), where she was assigned a Global Assessment of Functioning (GAF) score of 58 on several occasions. (Tr. 206, 216, 291). The treatment notes from 2009 indicate that the claimant was being treated for major depressive disorder, recurrent episode-severe; alcohol abuse-unspecified; high blood pressure; and menopause. (Tr. 206). She reported a suicide attempt while intoxicated in 2001, as well as abusive relationships in the past.

(Tr. 208). The claimant was started on an antidepressant, and reported continued anxiety in August 2009 and November 2009, but reported on July 20, 2010 that she felt great after being started on her "happy pills." (Tr. 227, 298, 310). It appears that Dr. Zielinski was in charge of the claimant's medication management, and reviewed her medications with her on a regular basis. (Tr. 227, 231, 234, 243-248 298-312). On February 27, 2010, consultative examiner Dr. Geo-Phillips Chacko examined the claimant and assessed her with history of mental disorder with suicidal thought and depression, as well as lumbar strain (and a noted decreased range of motion in the lumbar-sacral spine). (Tr. 252). On March 5, 2010, a state reviewing physician found that the claimant had marked limitations in restriction of activities of daily living and difficulties in maintaining concentration, persistence, or pace; mild limitations in difficulties in maintaining social functioning; and one or two episodes of decompensation. (Tr. 267). On August 31, 2010, a second state reviewing physician found that the claimant had only mild limitations in the three areas of functioning, and no episodes of decompensation. (Tr. 323). On November 8, 2010, Dr. Zielinski completed a "Medical statement concerning depression." (Tr. 328-330). He assessed the claimant as having limitations including moderate marked limitations in restriction of activities of daily living and extreme limitations in difficulty in maintaining social functioning. He also indicated that the claimant exhibited present deficiencies of concentration, persistence, or pace, repeated episodes of deterioration or decompensation in work or work-like settings, and a complete inability to function independently outside her home due to panic attacks. (Tr.

328). He also checked boxes indicating that the claimant had marked or extreme limitations in eighteen of twenty areas. (Tr. 329-330).

The claimant testified at the administrative hearing that she could not work because she had problems concentrating and did not like being around other people, and that leaving her house made her "panicky." (Tr. 35). She also testified that she experienced frequent bouts of worrying. (Tr. 35). She said that she mostly watches television at home, could not clean her house because she had difficulty standing, and that she had to lean on a grocery cart due to pain in her left leg if she accompanied her boyfriend to the grocery store. (Tr. 37-38). She stated that she believed her biggest problems were her depression, anxiety, panic attacks, and inability to sit and stand. (Tr. 41). She testified that Dr. Zielinski treated her, but treated her over a video feed rather than in person. (Tr. 42). She testified that she did not believe her medications helped her, and that she had attempted to commit suicide the week before. (Tr. 49-50).

The medical opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole,

(v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinions entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

     The ALJ summarized the claimant's testimony and the medical evidence. As to the medical evidence, the ALJ discussed Dr. Zielinksi's treatment notes, particularly the fact that Dr. Zielinski treated the claimant every three months through "telemedicine," and had not recommended inpatient hospitalization or "even more aggressive treatment." (Tr. 19). The ALJ also examined Dr. Zielinski's "Medical Statement," but referred to it as an "alleged 'opinion'" that was not signed but stamped, then stated that there was no evidence that Dr. Zielinski "even saw this form, and it does not appear that he completed the form." (Tr. 20). He also noted that Dr. Zielinski's assessment was "not consistent" with the medical evidence, as well as the number of time she was assigned a GAF of 58. The ALJ then stated, "This purported 'opinion' of Dr. Zielinski is given no weight, not only because it does not appear to actually be signed by the doctor, but because it is also quite inconsistent with the preponderance of the medical evidence of record." (Tr. 20). The ALJ then concluded that the claimant could perform medium work. (Tr. 20).

The ALJ's conclusion that the opinions expressed by Dr. Zielinski in his "Medical Statement" were inconsistent with other medical evidence in the case would have been a legitimate reason for refusing to give them controlling weight if the ALJ had specified the inconsistencies to which he was referring. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted]. But even if Dr. Zielinski's opinion *was not* entitled to controlling weight, the ALJ was required to determine the proper weight to give it by applying the factors in 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527."), *quoting Watkins,* 350 F.3d at 1300. Instead of performing this important analysis, the ALJ chose to reject Dr. Zielinski's opinions by theorizing that Dr. Zielinski did not himself complete the "Medical Statement." If the ALJ had doubts on this point, he could have re-contacted Dr. Zielinski to clear it up. *See* 20 C.F.R. § 404.1520b(c) ("[I]f after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may

recontact your treating physician, psychologist, or other medical source."). But he could not simply reject Dr. Zielinski's opinions based upon unsubstantiated speculation, as he seems to have done here. *See, e. g., McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."), *quoting Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Because the ALJ failed to properly analyze the weight due to Dr. Zielinski's opinion, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such results in any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, she can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of March, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma